**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| IVAN DOMINGUEZ-RODRIGUEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:18-CV-2098 RLW |
| | ) |
| DAVID VANDERGRIFF,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Ivan Dominguez-Rodriguez's pro se Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  (ECF No. 1.)

Petitioner is incarcerated at the Eastern Reception, Diagnostic and Correctional Center

("ERDCC").  For the following reasons, the Court will deny the Petition.

**Procedural History**

On September 13, 2013, a jury in the Circuit Court of the City of St. Louis, State of

Missouri, found Petitioner guilty of Assault First Degree (Count I), Armed Criminal Action (Count

II), and Burglary First Degree (Count III).  On December 13, 2013, the trial court sentenced

Petitioner to consecutive terms of twenty-five, five, and eight years on these counts, respectively,

for a total of thirty-eight years' imprisonment.  State v. Dominguez-Rodriguez, 2013 WL 9948363

(22nd Jud. Cir., State of Mo.) (Dec. 13, 2013).

---

[1] David Vandergriff is the current Warden of the Eastern Reception, Diagnostic and Correctional Center where Petitioner is incarcerated.  Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, David Vandergriff's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

Petitioner appealed his conviction to the Missouri Court of Appeals and raised four claims of trial court error.  The Missouri Court of Appeals affirmed on May 19, 2015.  State v. Dominguez-Rodriguez, 471 S.W.3d 337 (Mo. Ct. App. 2015) (Resp. Ex. E, ECF No. 7-5).

Petitioner timely filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 (Resp. Ex. G, ECF No. 7-7 at 8-13). Petitioner's post-conviction counsel filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing on January 28, 2016 (id. at 21-29) that raised one claim of ineffective assistance of trial counsel: failure to honor Petitioner's request to plead guilty in exchange for a likely twenty-year sentence shortly before trial began.  The motion court held an evidentiary hearing and subsequently denied the postconviction motion on May 22, 2017 (id. at 31-43).  The Missouri Court of Appeals affirmed the motion court's denial of postconviction relief on August 7, 2018.  Dominguez-Rodriguez v. State, No. ED105716, 553 S.W.3d 444 (Mo. Ct. App. 2018) (per curiam) (unpublished mem.) (Resp. Ex. J, ECF No. 7-10).

### Grounds Raised

Petitioner filed the instant Petition for habeas relief in federal court on December 17, 2018 (ECF No. 1), including Attachment A which sets forth his claims (ECF No. 1-1).  Respondent filed a response in opposition with supporting exhibits on February 4, 2019 (ECF No. 7).  Petitioner did not file a reply in support of his Petition.  The Petition raises the following grounds:

(1) The trial court erred in submitting Instruction No. 9, the verdict-directing instruction on the Armed Criminal Action count, because it did not specify the "dangerous instrument" charged;

(2) The trial court erred in overruling Petitioner's Batson[2] challenge to the prosecutor's use of a peremptory strike to remove African-American venireperson F. Collier from the venire panel;

---

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

(3) The trial court erred in overruling Petitioner's <u>Batson</u> challenge to the prosecutor's use of a peremptory strike to remove African-American venireperson D. Cannon from the venire panel;

(4) The trial court erred and abused its discretion in overruling the defense objection to the prosecutor's statement during closing argument that Petition, by using an interpreter at his trial, was "hiding behind" and "hiding between" his Spanish interpreter and did not really need one;

(5) Trial counsel was ineffective for failing to honor Petitioner's request to plead guilty in exchange for a likely twenty-five year sentence, shortly before trial began;

(6) Trial counsel was ineffective for failing to ask for a mistrial when the victim spoke to jurors at the close of the case and said, "Hello, and thank you very much";

(7) Trial counsel was ineffective for failing to cross-examine the victim to impeach her testimony because her original statements to police were different from her trial testimony on direct examination; and

(8) Trial counsel was ineffective for failing to produce expert witness testimony on Petitioner's behalf to challenge DNA forensic evidence.

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.

**Factual Background**

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows:

In the early morning hours of August 20, 2012, Defendant entered B.J.'s (Victim's) home through the back door. Defendant choked her, beat Victim's head and body with his fists, and beat her on the head with a "very, very hard" object, which Victim later realized to be her hair straightener. Defendant was silent during the attack and did not respond when Victim asked him what he wanted. Eventually, Defendant fled Victim's home, scaling a chain link fence in her back yard. As a result of the attack, Victim suffered lacerations to her head, a broken jawbone and

cheekbone, four broken ribs, a lacerated and collapsed lung, a lacerated spleen, a gash on her knee, and a broken finger.

Defendant was subsequently arrested and charged with first-degree assault, armed criminal action based on the first-degree assault charge, and first-degree burglary.  At trial, the State produced DNA evidence showing that blood smears found outside Victim's home matched that of the Victim.  The State also produced evidence showing that DNA found on the pants Defendant wore on the night of the assault, as well as DNA found on Defendant's flip flop and stocking cap, matched Victim.  In his defense, Defendant testified, with the aid of a Spanish interpreter, that he had been drinking the day before the assault and, upon returning to his home, had continued to drink and had fought with his girlfriend over the phone.  Defendant further testified that he entered the back door of Victim's home believing it to be his own and when he saw Victim lying on the floor bleeding, he fled.

The jury found Defendant guilty of the crimes charged.  The trial court adopted the jury's sentencing recommendation and sentenced Defendant to consecutive terms of 25 years' imprisonment for first-degree assault, five years' imprisonment for armed criminal action, and eight years' imprisonment for first-degree burglary.

Dominguez-Rodriguez, 471 S.W.3d at 341-42; (Resp. Ex. E, ECF No. 7-5 at 2).

**Legal Standard**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard.  Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).  Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules.  Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default."  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct.

App. 1980)).  If the petitioner failed to properly present the claim in State court, and no adequate

non-futile remedy is currently available by which he may bring the claim in that forum, the claim

is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the

[petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also

Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

     Where the State court adjudicated a claim on the merits, federal habeas relief can be granted

on the claim only if the State court adjudication "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28

U.S.C. § 2254(d)(2).  See Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be

clearly established at the time the petitioner's State conviction became final, and the source of

doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

     A State court's decision is "contrary to" clearly established Supreme Court precedent when

it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme

Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13;

Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A State court's decision is an "unreasonable

application" of Supreme Court precedent if it "identifies the correct governing legal principle from

[the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

prisoner's case."  Williams, 529 U.S. at 413.  Merely erroneous or incorrect application of clearly

established federal law does not suffice to support a grant of habeas relief.  Instead, the State

court's application of the law must be objectively unreasonable.  Id. at 409-11; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007).  Erroneous findings of fact do not automatically require the grant of habeas relief, however.  Instead, the determination of these facts must be unreasonable in light of the evidence of record.  Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  This standard is "difficult to meet."  Id.

## Procedurally Defaulted Claims

A.  Ground One – Trial Court Error

In Ground One of the Petition, Petitioner asserts the trial court erred in submitting Instruction No. 9, the verdict-directing instruction on the Armed Criminal Action count, because it did not specify the "dangerous instrument" charged.  Petitioner contends that the State argued either a hand or a hair straightener could be the dangerous instrument; a hand is not a dangerous instrument;  the instruction did not ensure the jury would unanimously convict Petition of the same

6

conduct; whether the victim was struck by a hand or other object was disputed at trial; and the lack of a unanimous verdict on this count caused a manifest injustice and resulted in a consecutive five-year sentence.  (ECF No. 1-1 at 1.)

Although Petitioner raised this claim on direct appeal, he did not object to Instruction No. 9 at trial.  As a result, the Missouri Court of Appeals found that Petitioner did not preserve the claim of error.  Dominguez-Rodriguez, 471 S.W.3d at 342 ("To preserve a claim of instructional error, counsel must make specific objections to the allegedly erroneous instruction at trial and in a motion for new trial.") (quoting State v. Banks, 434 S.W.3d 100, 102 (Mo. Ct. App. 2014)); (Resp. Ex. E, ECF No. 7-5 at 4).  A claim must be presented at each step of the judicial process in state court in order to avoid procedural default.  Jolly, 28 F.3d at 53.  The Missouri Court of Appeals reviewed the merits of the unpreserved instructional error claim for plain error and found none. Dominguez-Rodriguez, 471 S.W.3d at 342-45 (ECF No. 7-5 at 4-9.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error."  Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015).  Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Coleman, 501 U.S. at 750.

Ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation.  See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim.  See id. at 452 ("[A] claim of ineffective assistance, we said,

generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 489 (1986)) (internal citations omitted).  Here, Petitioner did not raise an accompanying ineffective assistance of counsel claim in state court for failure to present the instructional error claim.  As a result, Petitioner fails to demonstrate cause for his procedural default.

If a prisoner fails to demonstrate cause, the court need not address prejudice.  <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007).  Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006); <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-53 (8th Cir. 1997).  Indeed, Petitioner concedes that he "doesn't contest his guilt in this case[.]"  (ECF No. 1-1 at 7.)

Consequently, the claim raised in Ground One is procedurally barred from habeas review and will be dismissed.

B. <u>Grounds Six, Seven, and Eight – Ineffective Assistance of Trial Counsel</u>

In Grounds Six, Seven, and Eight, Petitioner asserts claims of ineffective assistance of trial counsel that he raised in his pro se Rule 29.15 Motion to Vacate, Set Aside, or Correct Judgment and Sentence, but which were not included in the Amended Motion to Vacate filed by post-conviction counsel.

To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings.  <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  <u>Id.</u> at 1150.  Where a prisoner has defaulted his federal claims in state court pursuant

to an independent and adequate state procedural rule, such as failing to raise claims on appeal, federal habeas review of the claims is barred.  Coleman, 501 U.S. at 750.

As stated above, a petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice.  Id.  To satisfy the "cause" requirement, Petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner.  Id. at 753.  Petitioner failed to raise claims six, seven, and eight in his Amended Rule 29.15 post-conviction motion.  Petitioner makes no attempt to establish cause or prejudice, and does not claim actual innocence.

Consequently, the claims raised in Ground Six, Seven, and Eight are procedurally barred from habeas review and will be dismissed.

**Claims Addressed on the Merits**

The record shows Petitioner properly raised the following claims in State court and that the Missouri Court of Appeals denied relief on review of the merits.  The Court turns to the merits of the claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

A.  Ground Two –Trial Court Error – Denial of Batson Challenge as to Venireperson Collier

In Ground Two, Petitioner asserts the trial court erred in overruling his Batson challenge to the prosecutor's use of a peremptory strike to remove African-American venireperson Collier from the venire panel, and thereby violated his and the venireperson's equal protection rights and his right to a fair trial.  Petitioner argues the State did not strike similarly situated white venirepersons, Collier testified about a strong positive experience she had with the prosecutor's office, and the State disproportionately struck American-American venirepersons.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference. The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

When reviewing a trial court's Batson challenge decision, this Court accords its findings great deference because those findings are largely dependent on credibility evaluations. State v. Washington, 288 S.W.3d 312, 314 (Mo. App. E.D. 2009). This Court will overturn the trial court's ruling on a Batson challenge only upon a showing of clear error. State v. McFadden, 191 S.W.3d 648, 651 (Mo. banc 2006). "A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." Id.

Venireperson [F.] Collier

In his second point relied on, Defendant asserts that the trial court clearly erred by overruling his Batson objection to the prosecutor's peremptory strike of venireperson Collier because the proffered reason for the strike—that she had a brother-in-law and husband who had been previously incarcerated and would cause her to view the prosecutor's office negatively—was pretextual. In support, Defendant points out that similarly situated white jurors were not struck, Collier reported a positive experience with the "prosecutor's office," and the prosecutor disproportionately struck African–American venirepersons.

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." State v. McFadden, 369 S.W.3d 727, 739 (Mo. banc 2012) (citation and quotations omitted). Therefore, a peremptory challenge that is motivated by gender, ethnicity, or race violates a defendant's and the venireperson's equal protection rights. See id. If a defendant suspects that such a prohibited basis exists for the State's strike, then the defendant can make a Batson objection to challenge the strike. State v. Dow, 375 S.W.3d 845, 848 (Mo.App.W.D.2012). Three procedural steps are followed when a defendant raises a race-based Batson challenge: "(1) the defendant raises a Batson challenge with respect to a specific venireperson struck by the State, identifying the cognizable racial group to which that person belongs; (2) the State must supply a reasonably specific and clear race-neutral reason for the challenged strike; and (3) if the State provides an acceptable reason for the strike, then the defendant must show that the State's given reason or reasons were merely pretextual and that the strike was racially motivated." State v. Johnson, 207 S.W.3d 24, 35 (Mo. banc 2006).

In determining pretext, the primary consideration is the "plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." Id. Factors that a court considers in determining pretext include: (1) whether a similarly situated white juror was not struck; (2) the "degree

of logical relevance between the proffered explanation and the case to be tried[;]" and, (3) "the prosecutor's credibility based on his or her demeanor or statements made during voir dire and the court's past experiences with the prosecutor." State v. Strong, 142 S.W.3d 702, 712 (Mo. banc 2004) (citation and quotations omitted). Other "[o]bjective factors bearing on the [S]tate's motive to discriminate . . . [include] conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses." State v. Bateman, 318 S.W.3d 681, 691 (Mo. banc 2010). A disproportionate number of strikes against other minority venirepersons or number of venirepersons remaining after completion of peremptory strikes may also be considered. Id. This Court accords great deference to the trial court's determination of pretext because the trial court is in a better position to evaluate the credibility and demeanor of the prosecutor, as well as the venirepersons. State v. Murphy, 443 S.W.3d 721, 725-726 (Mo.App.E.D.2014); State v. Nylon, 311 S.W.3d 869, 882 (Mo.App.E.D.2010).

Here, Defendant met the first step with respect to venireperson Collier, namely by identifying Collier as an African–American female and implying that the prosecutor had exercised his peremptory strikes to remove members of that group from the jury. Thereafter, the prosecutor provided a race-neutral reason for the strike. The prosecutor explained that Collier's husband had been prosecuted by his office and had served a term of imprisonment. "[H]aving an incarcerated family member is a race-neutral reason for a peremptory strike." State v. Clark, 407 S.W.3d 104, 108 (Mo.App.E.D.2013) (citing State v. Cole, 71 S.W.3d 163, 173 (Mo. banc 2002)). Because the prosecutor provided a race-neutral reason for the strike, the burden shifted to Defendant to demonstrate that the prosecutor's reasoning was merely a pretext for racial discrimination. See Johnson, 207 S.W.3d at 35. Defendant asserted, as he does on appeal, that the prosecutor's reason for striking Collier is pretextual because her husband's drug offense occurred in the late 1980s, other white female venirepersons, Rebecca Harris and Pamela Hardy, were similarly situated because Harris had a nephew in county jail and Hardy had nephews who had been to prison and another in county jail, and the prosecutor disproportionately struck African–American venirepersons. The trial court concluded that the prosecutor's reason for striking Collier was not pretextual.

Regarding Defendant's assertion that similarly situated jurors were not struck, we believe that having a close family member previously incarcerated, who was prosecuted by the same office prosecuting the instant case, is different than having a distant relative either spend the night in jail or go to prison. See cf. State v. Murray, 428 S.W.3d 705, 713 (Mo.App.E.D.2014) (distinguishing between venirepersons with family members charged with a crime versus actually convicted of a crime). Differences in degree of familial relation and terms of confinement aside, nothing in the record indicates that Harris' nephew's offense arose in the City of St. Louis, such that Harris would have any reason to unfavorably view the State's case. Similarly, Hardy's nephews were prosecuted in Jefferson County. And, neither Harris nor Hardy indicated that they visited their nephews while confined. Comparatively, that Collier visited her husband while incarcerated, indicating a

close relationship, and that her husband was prosecuted by the same office pursing Defendant's convictions, could reasonably cause Collier to view the State's case unfavorably, despite the fact that the incident occurred in the late 1980s. Defendant, therefore, did not demonstrate that a venireperson similarly situated to Collier was not struck.

While the absence of a similarly situated white juror who was not struck is not dispositive in determining pretext, see Murphy, 443 S.W.3d at 725, the other factors Defendant raises do not indicate that the prosecutor's peremptory strike of Collier was based on racial animus. Defendant does not explain how the fact that Collier's husband's was incarcerated over twenty years ago renders the prosecutor's strike discriminatory, nor how the prosecutor's decision to use four of its six strikes against African–Americans demonstrates pretext. Indeed, absent from the record is any indication that the State acted on a pattern of discrimination in striking Collier.

On appeal, Defendant additionally explains that because Collier reported a positive experience with the prosecutor's victim's assistance office when her husband was the victim of a crime, that the State's concern that Collier had "issues" with his office was "transparently pretextual." That Collier had a positive experience with the victim's assistance office, does not necessarily mean that she viewed the Circuit Attorney's office similarly. In any case, Defendant did not make this argument to the trial court and we will not find error based on an argument that the trial court was not afforded an opportunity to consider. Murray, 428 S.W.3d at 714.

In sum, considering the totality of the circumstances, we cannot conclude that the trial court clearly erred by denying Defendant's challenge to the prosecutor's strike of venireperson Collier. Point II denied.

Dominguez-Rodriguez, 471 S.W.3d at 345-48; (Resp. Ex. E, ECF No. 7-5 at 9-13).

"Batson established that 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'" Stenhouse v. Hobbs, 631 F.3d 888, 891 (8th Cir. 2011) (quoting Batson, 476 U.S. at 89). The Supreme Court has established a three-part test to determine whether a peremptory strike violates the constitution. First, the petitioner must establish a prima facie case showing that the prosecutor racially discriminated in exercising one or more peremptory challenge. Second, if the petitioner makes a prima facie showing, the State must offer a racially neutral explanation for the challenges. The State's explanation need not justify a

challenge for cause, or be persuasive, or even plausible.  Third, the trial court must decide whether the petitioner has established purposeful discrimination.  <u>Rice</u>, 546 U.S. at 338 (citing <u>Purkett v. Elem</u>, 514 U.S. 765, 767-68 (1995) (per curiam)).

     <u>Batson</u> issues turn "largely on an evaluation of credibility.  The trial court's determination is entitled to great deference, and must be sustained unless it is clearly erroneous."  <u>Felkner v. Jackson</u>, 562 U.S. 594, 598 (2011) (per curiam) (cleaned up, internal citations and punctuation omitted).  "[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the <u>Batson</u> challenge.  "A trial court's ruling on a <u>Batson</u> challenge is itself a factual determination[.]"  <u>Smulls v. Roper</u>, 535 F.3d 853, 860 (8th Cir. 2008).  State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'  § 2254(e)(1)."  <u>Rice</u>, 546 U.S. at 338.

     The Court concludes that the state trial court's decision on this matter did not involve an unreasonable application of <u>Batson</u>.  The trial court followed proper procedures, asking the prosecutor to present a race-neutral reason for the challenged strike.  (Tr. 364:5-16; Resp. Ex. A, ECF No. 7-1 at 364.)  When Petitioner offered an argument for rejecting the prosecutor's reason, the court addressed the argument and made factual determinations.  (Tr: 364:17-368:13; ECF No. 7-1 at 364-68.)  Petitioner fails to overcome with clear and convincing evidence the presumption of correctness afforded the trial court's <u>Batson</u> findings.

     The Missouri Court of Appeals also reasonably determined that there was good reason to distinguish between Ms. Collier, the venireperson who was struck, and the white venirepersons who were not.  This decision was not contrary to, or an unreasonable application of, clearly

established Federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.

Ground Two will be denied.  See Stenhouse, 631 F.3d at 892-93 (holding the state courts reasonably rejected a Batson claim where "the similarly situated" venirepersons posed by the defense were not actually similarly situated); Cole v. Roper, 623 F.3d 1183, 1188 (8th Cir. 2010) (same).

## B.  Ground Three–Trial Court Error – Denial of Batson Challenge as to Venireperson Cannon

In Ground Three, Petitioner asserts the trial court erred in overruling his Batson challenge to the prosecutor's use of a peremptory strike to remove African-American venireperson Cannon from the venire panel, and thereby violated his and the venireperson's equal protection rights and his right to a fair trial.  Petitioner argues the State did not strike white venirepersons who had nephews who spent time in jail, the State did not know if its office prosecuted Ms. Cannon's husband, and the State disproportionately struck American-American venirepersons.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.  The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In her [sic] third point relied on, Defendant asserts that the trial court clearly erred by overruling his Batson objection to the prosecutor's peremptory strike of venireperson Cannon because the proffered reason for the strike—"that her husband and son had been previously incarcerated and may cause her to view the prosecutor's office negatively"—was pretextual.[4]  In support, Defendant points out that white jurors not struck had nephews in jail, that the prosecutor did not know whether its office had prosecuted Cannon's husband and stepson, and that the State disproportionately struck African–American venirepersons.
>
> Defendant met the first Batson challenge requirement with respect to venireperson Cannon, by identifying her as an African–American female and implying that the prosecutor had exercised his peremptory strikes to remove

---

[4] Defendant misstates the record, as venireperson Cannon reported that her husband and *stepson* were *currently* incarcerated for charges arising out of St. Louis County.

members of that group from the jury.  Thereafter, the prosecutor provided a race-neutral reason for the strike: That Cannon's husband and stepson were currently incarcerated in St. Louis County.  "[H]aving an incarcerated family member is a race-neutral reason for a peremptory strike." Clark, 407 S.W.3d at 107 (citing Cole, 71 S.W.3d at 173).  Because the prosecutor provided a race-neutral reason for the strike, the burden shifted to Defendant to demonstrate that the State's reasoning was merely a pretext for racial discrimination.  See Johnson, 207 S.W.3d at 35.  In this regard, Defendant asserted that the prosecutor's strike was pretextual because similarly situated white female jurors, Harris and Hardy, were not struck and because the State disproportionately struck African–American venirepersons.  The trial court determined the strike was not pretextual.

Again, having a close family member incarcerated is different than a distant family member spending the night in jail.  See cf. Murray, 428 S.W.3d at 713.  Indeed, as the State points out, Cannon was the only venireperson who had close family members currently incarcerated, of whom she visited regularly and, as such, Defendant did not show that another venireperson was similarly situated.  As a result of her immediate family members' incarceration and her close connection to them, as demonstrated through her regular visitation with them, the prosecutor may have reasonably believed that Cannon could have a reason to view the State's case unfavorably.

Further, the other factors Defendant raises do not establish pretext.  Although the State used four of its six strikes against African–Americans, four of the twelve remaining jurors were African–American and Defendant does not explain how the distribution of strikes renders the prosecutor's strike of Cannon discriminatory.  Defendant also does not explain how the prosecutor's lack of knowledge about whether its office prosecuted Cannon's husband and son contributed to the prosecutor's alleged discriminatory strike.[5]  There are otherwise no indications on the record that the State acted on a pattern of discrimination in striking Cannon.  As we afford great deference to the trial court's determination whether the prosecutor's strike is pretextual, we conclude, given the totality of the circumstances, that the trial court did not clearly err in its decision to accept the prosecutor's reason for striking Cannon.  Point III denied.

_____

[5] Moreover, Defendant did not raise this factor before the trial court and we will not find error based on an argument that the trial court was not afforded an opportunity to consider.  Murray, 428 S.W.3d at 714.

Dominguez-Rodriguez, 471 S.W.3d at 348-49, (Resp. Ex. E, ECF No. 7-5 at 13-15).

"Batson established that 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'" Stenhouse, 631 F.3d at 891 (quoting Batson, 476 U.S. at 89).  The Supreme Court has established a three-part test to determine whether a

peremptory strike violates the constitution.  First, the petitioner must establish a prima facie case showing that the prosecutor racially discriminated in exercising one or more peremptory challenge. Second, if the petitioner makes a prima facie showing, the State must offer a racially neutral explanation for the challenges.  The State's explanation need not justify a challenge for cause, or be persuasive, or even plausible.  Third, the trial court must decide whether the petitioner has established purposeful discrimination.  Rice, 546 U.S. at 338 (citing Purkett, 514 U.S. at 767-68).

Batson issues turn "largely on an evaluation of credibility.  The trial court's determination is entitled to great deference, and must be sustained unless it is clearly erroneous."  Felkner, 562 U.S. at 598 (cleaned up, internal citations and punctuation omitted).  "[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge.  "A trial court's ruling on a Batson challenge is itself a factual determination[.]"  Smulls, 535 F.3d at 860.  State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1)."  Rice, 546 U.S. at 338.

The Court concludes that the state trial court's decision on this matter did not involve an unreasonable application of Batson.  The trial court followed proper procedures, asking the prosecutor to present a race-neutral reason for the challenged strike.  (Tr. 368:14-18; Resp. Ex. A, ECF No. 7-1 at 368.)  When Petitioner offered an argument for rejecting the prosecutor's reason, the court addressed the argument and made factual determinations.  (Tr: 368:19-370:3; ECF No. 7-1 at 368-70.)  Petitioner fails to overcome with clear and convincing evidence the presumption of correctness afforded the trial court's Batson findings.

The Missouri Court of Appeals also reasonably determined that there was good reason to distinguish between Ms. Cannon, who was struck, and the white venirepersons who were not.  This

16

decision was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.

Ground Three will be denied.  See Stenhouse, 631 F.3d at 892-93 (holding the state courts reasonably rejected a Batson claim where "the similarly situated" venirepersons posed by the defense were not actually similarly situated); Cole, 623 F.3d at 1188 (same).

C.  Ground Four – Trial Court Error – Overruling Defense Objection to Closing Argument

In Ground Four, Petitioner asserts that the trial court erred in overruling the defense's objection to the prosecutor's statement during closing argument that Petitioner, by using an interpreter at his trial, was "hiding behind" and "hiding between" his Spanish interpreter and did not really need one.  Petitioner asserts that the prosecutor's argument invited the jury to draw an adverse inference against him as a Spanish-speaking person, apart from the facts and evidence at trial, and was a successful attempt to stoke the jury's hostility against him.

Respondent states that the Missouri Court of Appeals denied this claim because the prosecutor's statements during closing argument were being used to indicate that Petitioner knew what was going on at trial and during the crime, not to prejudice the jury against him.  Respondent asserts that this decision on the merits of the claim is reasonable and entitled to deference.

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In his fourth point relied on, Defendant claims the trial court abused its discretion by overruling his objection to the prosecutor's closing argument, which stated that Defendant, by using an interpreter at trial, was "hiding behind" and "hiding between" the Spanish interpreter and did not really need one.  According to Defendant, this argument "invited the jury to draw an adverse inference based on [Defendant] being a Spanish speaking person, based on [Defendant's] national origin, and based on his immigration status, and was an attempt to stoke the hostilities of the jury against [Defendant] based on these improper considerations."  The State responds that the trial court did not abuse its discretion by overruling

Defendant's objection.  The State asserts that its argument was not improper and did not prejudice Defendant.

"A trial court maintains broad discretion in the control of closing arguments." State v. Edwards, 116 S.W.3d 511, 537 (Mo. banc 2003).  Statements made during closing argument must be viewed in context of the entire record. Id. The trial court's rulings with respect to the scope of closing argument "will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant[,]" i.e., that the outcome of the trial would have been different had the error not be made. State v. Deck, 136 S.W.3d 481, 488 (Mo. banc 2004); State v. Deck, 303 S.W.3d 527, 540 (Mo. banc 2010).

The defense theory in its closing argument was that Defendant's version of events was credible, whereas the testimonies of Victim and the officers was not believable and that the DNA evidence connecting Defendant to the crime did not support that Defendant committed the crimes.  In his rebuttal closing argument, the prosecutor sought to rehabilitate Victim's testimony by attacking Defendant's credibility.  The prosecutor argued:

[The State]:  And what do we have to refute the victim?  The asinine story of the defendant who got up here, sat here and told you all this detail, I played soccer, I did this, I did that, and then he hides between the translator because what he did numerous times throughout the trial—

[Defense counsel]:  Objection, your Honor, it's completely inappropriate to suggest he's hiding behind a translator.  There's been no evidence of that. He has the right to have a translator and that's inappropriate, your Honor.

THE COURT:  Overruled.

[The State]:  I asked him on a couple of occasions, you all remember that? Please wait for your translator to answer because he was answering my questions and he did it on his own counsel's questions.  You make up your mind.  Was he hiding behind the interpreter because he's not speaking very well, but the fact of the matter is he understood what was going on.

Generally, "[a] prosecuting attorney should not inflame the passions or prejudices of the jury against a defendant." State v. Douglas, 720 S.W.2d 390, 393 (Mo.App.S.D.1986).  Arguments designed to induce a jury to act on passion or prejudice may include personal attacks or the invocation of personal epithets, speculation about future crimes the defendant might commit, or statements designed to make the jury fear a defendant, such as arguments that ask the jury to put themselves in the victim's place. State v. Banks, 215 S.W.3d 118, 121 (Mo. banc 2007) (personal attacks); State v. Storey, 901 S.W.2d 886, 901 (Mo. banc 1995) (personalized arguments); State v. Swenson, 551 S.W.2d 917, 919 (Mo.App.1977) (personal epithets and speculation about future crimes).

Here, the prosecutor's comments, when read in context, were designed to attack Defendant's credibility.  As noted, the prosecutor made the comments in his rebuttal closing argument, which indicates an intention to rehabilitate Victim's version of events by arguing that Defendant's testimony should not be believed.  In essence, the prosecutor was arguing that Defendant was a liar, *i.e.*, Defendant represented that he only spoke Spanish and needed an interpreter and, yet, was able to understand and answer questions during examination without the interpreter's help.  Commentary on a defendant's credibility is proper in a prosecutor's closing argument.  See State v. Washington, 444 S.W.3d 532, 540–41 (Mo.App.E.D.2014) ("[A prosecutor] may comment on . . . the credibility of the defendant's case [and] may even belittle and point to the improbability and untruthfulness of specific evidence." (citation and quotations omitted)).

Defendant's contrary assertion, that the comments were made to inflame the jury's passion and to encourage punishment based on Defendant's national origin and the fact that he is a Spanish speaker, is not supported by the record.  Defendant points out that several "potential jurors" made disparaging comments regarding illegal immigrants during voir dire and that the State asked about Defendant's immigration status during the penalty phase of the trial.[7]  These facts do not show that the jury, as result of the State's rebuttal closing argument, acted on personal animus when deliberating as to Defendant's guilt.  Defendant has not met his burden of showing that the State's argument affected the jury's verdict.

In sum, the State's closing argument was proper and the trial court did not abuse its discretion by permitting the argument.  Point IV denied.

Dominguez-Rodriguez, 471 S.W.3d at 349–50 (n.6 omitted); (Resp. Ex. E at 21-24).

Under federal law, to establish a violation of due process based on improper argument, a habeas petitioner must show the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985).  A petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability the jury would have returned a different verdict.  Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir.1987).  "'[T]he relevant question under federal law is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'" <u>Mack v. Caspari</u>, 92 F.3d 637, 643 (8th Cir.1996) (quoting <u>Darden</u>, 477

U.S. at 181).  And, as the Supreme Court observed,

> closing arguments of counsel [] are seldom carefully constructed in toto before the
> event; improvisation frequently results in syntax left imperfect and meaning less
> than crystal clear.  While these general observations in no way justify prosecutorial
> misconduct, they do suggest that a court should not lightly infer that a prosecutor
> intends an ambiguous remark to have its most damaging meaning or that a jury,
> sitting through lengthy exhortation, will draw that meaning from the plethora of
> less damaging interpretations.

<u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 646-47 (1974).

The Missouri Court of Appeals applied Missouri precedent that closely follows <u>Darden</u>'s

standard, and construed the prosecutor's rebuttal argument concerning Petitioner's use of an

interpreter, in context, as a permissible attack on Petitioner's credibility.  The court noted,

consistent with federal law, that the trial court has broad discretion in controlling closing

arguments, and that statements made during closing must be viewed in context of the entire record.

The court concluded that Petitioner failed to show that, as a result of the State's rebuttal closing

argument, the jury acted on personal animus when deliberating as to his guilt.  Finally, it concluded

that Petitioner did not meet his burden to show that the State's argument affected the jury's verdict.

The Court determines that the Missouri Court of Appeals' decision was not contrary to, or

an unreasonable application of, clearly established Federal law, nor was it a decision based on an

unreasonable determination of the facts in light of the evidence presented.   28 U.S.C.

§§ 2254(d)(1), (2); <u>Williams</u>, 529 U.S. at 379.

Ground Four will be denied.

D.  <u>Ground Five – Ineffective Assistance of Trial Counsel – Plea Offer</u>

In Ground Five, Petitioner asserts that trial counsel was ineffective for failing to honor his

request to plead guilty shortly before trial began in exchange for a likely twenty-year sentence.

Petitioner asserts he learned on the morning of trial that either the State had offered a twenty-year sentence or the "docketing division judge" had indicated a twenty-year sentence would be reasonable; Petitioner told his counsel he wanted to plead guilty and receive twenty years, but trial counsel told him she thought she could get a better deal.  Without warning to Petitioner, trial began several hours later and he was found guilty and received a thirty-eight year sentence.

As stated previously, Petitioner raised this claim in his Rule 29.15 post-conviction motion and the motion court denied it following an evidentiary hearing.  The Missouri Court of Appeals affirmed.  Respondent argues the Missouri Court of Appeals' decision denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals discussed the ineffective assistance of counsel claim as follows:

> In denying Movant's motion for post-conviction relief, the motion court found that Movant did not establish that "Trial Counsel failed to attempt to negotiate a plea or failed to advise Movant of a plea offer."  The motion court specifically noted that Movant failed to establish "that there was ever a plea offer, the terms of any such plea offer, what plea offer Movant would have accepted, or that Movant would have agree[d] to enter a blind plea."  We agree.

> To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display when rendering similar services under the existing circumstances, and the movant was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove prejudice, a movant must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different.  Id. at 694.  Trial counsel is presumed effective, and a movant bears the burden of proving otherwise.  Forrest, 290 S.W.3d at 708.

> The Sixth Amendment guarantees a defendant the right to have counsel at all critical stages of a criminal proceeding, including plea negotiations.  Arnold v. State, 509 S.W.3d 108, 113 (Mo. App. E.D. 2016).  The Supreme Court has noted specific instances of ineffective assistance of counsel during the plea bargaining stage: (1) failure to communicate an existing offer to the defendant; and (2) providing bad advice about an existing offer.  Id. (citing Missouri v. Frye, 566 U.S. 134, 145 (2012)).  The Supreme Court, however, was careful to note the limited scope of its holding and stressed that the case did not define trial counsel's duties

during plea negotiations.  Frye, 566 U.S. at 145 ("This case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects . . . .").  Thus, while trial counsel must inform and advise a defendant on existing offers, trial counsel is not constitutionally obligated to make plea offers to the State as suggested by the defendant.  Id. at 114.  A movant claiming ineffectiveness of counsel during a plea negotiation must show a reasonable probability that a plea offer was made and that he or she would have accepted the plea offer instead of proceeding to trial.  State v. Colbert, 949 S.W.2d 932 (Mo. App. W.D. 1997).

"A defendant who repeatedly assures the court that he is satisfied with his counsel's performance and that his counsel had done everything that he requested is later barred from obtaining post-conviction relief based on ineffective assistance of counsel."  Morrison v. State, 536 S.W.3d 782, 786 (Mo. App. E.D. 2017) (quoting Estes v. State, 950 S.W.2d 539, 542 (Mo. App. E.D. 1997)).

Here, the trial court questioned Movant regarding his satisfaction with Trial Counsel's representation after his sentencing hearing:

THE COURT: How did [Trial Counsel] do for you as an attorney in this case?

MOVANT: Well, yeah, she's helped me out fine, and I want her to stay with me.

THE COURT: Are you satisfied with the representation that she gave you in this case?

MOVANT: Yes.

THE COURT: Did she do everything you asked her to do?

MOVANT: Yes.

THE COURT: Did she do anything against your wishes where you told her you did not want her to do that?

MOVANT: No.
. . . .

THE COURT: And from what I hear you say, you are satisfied with the representation you received; is that correct?

MOVANT: Yeah.

Movant repeatedly assured the trial court that he was satisfied with Trial Counsel and affirmed that Trial Counsel did not do anything against his wishes.

Moreover, the record does not provide any indication that a plea offer was ever made by the State.  At the evidentiary hearing, Trial Counsel testified that she had made plea offers of five and seven years, pursuant to Movant's request prior to the trial, which were rejected by the State.  Trial Counsel further testified that the Circuit Attorney's Office was not in the practice of making plea offers at the time of Movant's case.  Trial Counsel stressed that she only had a vague memory of any conversation regarding a 20-year sentence, but was not sure if the sentence was discussed with the State in rejecting her plea offers or with the trial court in discussing a blind plea.  Regardless, Trial Counsel's testimony involving a 20-year sentence failed to establish that a formal plea offer was ever made by the State, and instead reiterated that the State was not making recommendations on felonies similar to Movant's in the present case.

Even assuming, arguendo, that a 20-year sentence offer was discussed, the record indicates that Movant was not willing to accept the offer, and therefore, was not prejudiced by the alleged failure to communicate an offer.  When asked what sentence he would have accepted in pleading guilty, Movant stated, "The truth is, I don't know if they had given me 10 or 12, I don't know if I would have pled guilty."  Trial Counsel stressed that had Movant expressed a desire to plead guilty for a 20-year sentence, she would have informed the court and not have proceeded to trial.  Trial Counsel, however, stated, "I was definitely left with the impression that he was not interested in pleading guilty with 20 years . . . ."  Thus, the motion court heard testimony from Movant and Trial Counsel concerning Movant's unwillingness to plead guilty, and determined that Movant's claim failed to sufficiently show prejudice.

Considering Movant's repeated assurance of satisfaction with Trial Counsel and evidence in the record demonstrating a repeated reluctance to accept a plea offer, Movant failed to show that Trial Counsel was ineffective or that Movant was prejudiced by any alleged error.  Thus, the motion court did not clearly err in denying Movant's Rule 29.15 motion.  Movant's point is denied.

(Resp. Ex. J, ECF No. 7-10 at 5-8.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland.  To establish ineffective assistance, a petitioner must show (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense."  Id. at 687-88.  Strickland provides a "highly deferential" standard to review

ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable."  See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 562 U.S. at 101.  Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id. at 105.  "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690).  "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'"  Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

On post-conviction appeal, the Missouri Court of Appeals applied the Strickland standard. The court found there was no evidence a formal plea offer was ever made by the State and, even assuming a twenty-year sentence offer was discussed, the record indicated Petitioner was not willing to accept the offer and therefore was not prejudiced by the alleged failure to communicate

24

an offer.  Further, the court considered that Petitioner repeatedly assured the trial court he was satisfied with his counsel's representation and affirmed that she did not do anything against his wishes.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by that court.  <u>See</u> <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Ground Five will be denied.

**Conclusion**

For the foregoing reasons, the Court concludes that the grounds in Petitioner Ivan Dominguez-Rodriguez's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits, and must be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that David Vandergriff's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that Petitioner Ivan Dominguez-Rodriguez's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Dominguez-Rodriguez has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 8th day of February, 2022.